ORDERED.

Dated: October 24, 2017

K. Rodney May
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re

| | |
|---|---|
| Vegas Management, LLC | Case No.: 8:16-bk-04856-KRM<br>Chapter 7 |
| JFL Venture Fund IV, LLC | Case No.: 8:16-bk-04857-KRM<br>Chapter 7 |
| | *Jointly Administered under*<br>*Case No.: 8-16-bk-04856-KRM* |
| Debtors.<br>_____/ | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR**
**ADMINISTRATIVE CLAIM OF BRUCE GOLDBERG/SECUREVEST REALTY, LLC**

Before the Court is a motion for payment of an administrative expense claim, filed by real estate brokers Bruce Goldberg and Securevest Realty, LLC (collectively, "Goldberg").[1] Goldberg was the pre-bankruptcy listing broker for the sale of commercial real estate owned by a non-debtor entity, 6950 Seminole Blvd., LLC (the "Seller"). Seller was owned, in part, and managed by one

---

[1] Goldberg's Motion for Administrative Claim of Bruce Goldberg/Securevest Realty, LLC is found at Doc. No. 224. Goldberg has filed a memorandum in support (Doc. No. 247), as well as affidavits by Bruce Goldberg (Doc. No. 247-1) and Christopher Jallo, on behalf of Seminole Park Holdings, LLC & Venture Three LLC (Doc. No. 250). The Chapter 7 Trustee's response is found at Doc. No. 262.

of the debtors herein, JFL Venture Fund IV, LLC ("JFL").[2] The other debtor in this case, Vegas Management, LLC ("Vegas"), was a tenant in the subject property. Vegas and JFL (collectively, "Debtors") filed Chapter 11 petitions on June 3, 2016. The voluntary petitions for both Debtors were signed by James Lowy, as manager. In other pleadings, Mr. Lowy is referred to as the Debtors' principal.[3]

Goldberg procured a contract for the property shortly before JFL and Vegas filed petitions for relief under Chapter 11 (the "2016 Contract"). Whitney Bank was pursuing a foreclosure action against the Seller's real estate. In the Chapter 11 case, JFL obtained court approval to close on the pre-petition contract, but was unable to satisfy various conditions precedent. Thereafter, the cases were converted to Chapter 7, the Trustee terminated Goldberg's listing agreement and arranged (with the consent of the mortgagee and the owners of the Seller) to sell the property by a public auction conducted by another real estate firm.

The auction produced two active bidders. The successful bidder at the auction was a newly-formed entity owned by the principal of the pre-petition contract procured by Goldberg. Thus, Goldberg asserts that he is the procuring cause of the sale and is therefore entitled to a commission. After consideration of the briefs and argument, Goldberg's claim is due to be denied.

FACTUAL BACKGROUND

Pre-petition, Seller entered into an exclusive listing agreement with Goldberg to market and sell real property located in Seminole, Florida.[4] There is no dispute that Goldberg procured

---

[2] JFL's schedules reflect that it is the 65% equity holder of Seller. The Guardian and Trustees of Jacqueline Lowy and the Lowy Trust own 35% of the Seller. The Guardian and the Trustees do not concede that the equity distribution set forth above is correct, and do not waive their right to challenge the equity percentage in the future. All of these parties consented to the sale of the property.

[3] *See* Doc. No. 88.

[4] A copy of the exclusive listing agreement can be found at Vegas Doc. No. 225-1. The agreement, dated March 28, 2016, is between "James Lowy as Managing Member [of] 6950 Seminole Blvd. LLC," as

the 2016 Contract, dated May 24, 2016, with J&C Ventures III, LLC ("J&C"), as the potential buyer. Mr. Lowy signed the contract on behalf of Seller, as managing member.[5] The contract was scheduled to close on July 20, 2016.

JFL filed a motion in this court on June 23, 2016, to approve its performance of the contract. Although the real property was not included in JFL's bankruptcy estate, a portion of the potential net sales proceeds would be JFL's estate property.[6] Further, debtor Vegas owned liquor inventory and operated a nightclub on the subject property; thus, the sale would cause Vegas to cease those operations.

The Court approved the sale at a hearing on July 7, 2016, including a 2% real estate commission.[7] An addendum was approved by the Court on August 22, 2016 which reduced the

---

"owner," and "Bruce Goldberg as agent for Siesta Coast Realty," as "broker," and was, by its terms, set to expire on March 27, 2017.

[5] *See* JFL Doc. No. 21-1. The seller was listed as "6950 Seminole Blvd., LLC. (James F. Lowy, MGRM)."

[6] *See* JFL Doc. No. 21. While JFL has maintained it owns 65% of Seller, the actual ownership distribution is disputed. Debtor Vegas is a 65% member of Debtor JFL.

The sale motion stated that "[t]he buyer [J&C] is seeking a Comfort Order approving its proposed sale due to the fact that the principal member of the seller is a Debtor-in-Possession and that the current tenant of the property is also a Debtor-in-Possession" and that the Debtor sought "entry of an Order approving the sale so as to facilitate the completion of the sale transaction and to ensure that the net proceeds remain properly in bankruptcy estate."

*See* Doc. No. 48. "Debtor . . . hereby moves this Court for the entry of an Order approving the . . . sale of substantially all of the assets of the Debtor's subsidiary, [Seller] . . . ."

[7] *See* Pro Memo, JFL Doc. No. 32. An order granting the sale motion was entered on July 27, 2016 (JFL Doc. No. 44). The order does not specifically state that Goldberg is entitled to a commission. Instead, it states that the "closing agent is hereby authorized to disburse the real estate commission due to the appropriate broker or brokers." The parties do not dispute that Goldberg would have been entitled to the real estate commission under this contract if it had closed. The contract submitted to the Court for approval only included a 1% commission.

sales price to $1.6 million and extended the due diligence period in order to allow the seller to cure certain title defects, unresolved conditions precedent.[8]

On July 25, 2016, the United States Trustee ("UST") filed a Motion to Dismiss or Convert the cases, alleging that Mr. Lowy should not be allowed to remain as the Debtors' representative during the pendency of the bankruptcy cases.[9] Mr. Lowy had been suspended from the practice of law by the Florida Supreme Court on September 28, 2015, for "trust account shortages in excess of $60,000."[10] Mr. Lowy had also failed to comply with bankruptcy financial reporting requirements. On September 20, 2016, certain creditors filed an emergency motion to appoint a Chapter 11 trustee alleging that Mr. Lowy was "unfit to remain involved as management for the Debtors, as debtors-in-possession."[11] A trial on the motions was held on September 26, 2017. The UST's motion was granted and the cases were converted to Chapter 7 on September 27, 2016.[12]

---

[8] *See* JFL Doc. No. 63. The order authorizes "[t]he Debtor's representative, James Lowy, of [Seller] . . . to execute and deliver to the closing agent any and all documents customarily required to effectuate a closing for the proposed sale . . . ."

The addendum was signed by James F. Lowy, Managing Member. JFL Doc. No. 48-1.

[9] JFL Doc. No. 43 (amended on September 1, 2016, at JFL Doc. No. 67). A motion to dismiss was filed in the Vegas case on September 1, 2016 (Doc. No. 69).

[10] *See* Supreme Court of Florida case number SC15-1741. Mr. Lowy has since been disbarred. *See Conditional Guilty Plea for Consent Judgment* in SC16-2229 and SC16-2230 dated March 21, 2017, and Order dated January 5, 2017, in SC15-1741.

[11] JFL Doc. No. 74; Vegas Doc. No.79. The motion was filed by Linda Lowy, as the Guardian of Jacqueline Lowy (Mr. Lowy's mother). Five days earlier, Mr. Lowy had been arrested for carrying a loaded firearm into the Pinellas County Criminal Justice Center to attend a hearing in connection with his suspension and disbarment from the Florida Bar. Mr. Lowy was also accused of stealing "money from his family members' trusts, over which he was ostensibly a fiduciary, [using] significant marital assets . . . to acquire or operate the Debtors' businesses."

[12] The Order Granting Motion to Dismiss or Convert (JFL Doc. No. 90, Vegas Doc. No. 95) authorized the Chapter 7 trustee to "execute and deliver any documents necessary to facilitate the sale of the real property . . . ."

Angela Welch was appointed as the Chapter 7 Trustee. Ms. Welch attempted to close the real estate sale; but, title issues were not resolved to the buyer's satisfaction. The Trustee terminated the effort and returned the deposit to J&C.[13]

On February 16, 2017, the Trustee filed an application to employ John Doyle and Doyle and McGrath Real Estate, LLC, ("Doyle") to sell the property,[14] and on the following day filed a motion to do so by public auction.[15] The Trustee was intent on conducting the auction for the property prior to the foreclosure sale by Whitney Bank, scheduled for April 12, 2017.[16] Goldberg filed a response to the auction motion, stating that J&C was ready, willing, and able to close on the contract.[17] After hearing, the Court approved the auction and the employment of Doyle.[18]

The auction was conducted on March 21, 2017. Goldberg did not participate in the auction or subsequent negotiations. Seminole Park Holdings, LLC ("Seminole"), said to be a successor in interest to J&C, was the winning bidder with a purchase price of $1.675 million, plus a 4.5% buyer's premium.[19] All ownership interests of Seller approved the sale. Seminole and Trustee

---

[13] Termination occurred no later than February 15, 2017. Trustee also informed Goldberg she did not think Goldberg was entitled to a commission on a sale even if the contract did close.

[14] Doc. No. 186.

[15] Doc. No. 187.

[16] *See* Transcript, Doc. No. 208, at p. 23 – Ms. Gayo-Guitian (attorney for the Chapter 7 trustee): "We are very limited in terms of time, because [Whitney Bank] has a foreclosure sale on April 12th . . . ." *See also* Doc. No. 202 ("[A]ny sale for which a closing is set to occur after April 12, 2017 is objectionable to Whitney but only with respect to the fact that Whitney does not intend to delay its scheduled foreclosure sale to accommodate any sale that the Trustee may attempt regarding the Property. Most likely, however, a closing after April 12 will be a moot point since the foreclosure sale will divest [Seller] of its interest in the Property.")

[17] Doc. No. 205.

[18] The order authorizing the auction is found at Doc. No. 214. Orders regarding Doyle's employment are found at Doc. Nos. 189 and 212.

[19] *See* Doc. No. 223. The buyer's premium amounted to $75,375, bringing the full purchase price to $1,750,375.

executed a new *Purchase and Sale Agreement*. The next highest bid of $1.65 million was made by HRES of Seminole, LLC, who was approved by the Court as a backup buyer in the event Seminole failed to close. The Court approved the sale at a March 23, 2017 hearing. The sale was consummated on April 10, 2017 (the "2017 Sale").

Following the auction, Goldberg filed the instant motion for payment of an administrative claim, stating that as the procuring cause of the 2016 Contract, he was also the procuring cause of the 2017 Sale and therefore entitled to commission.[20]

## ANALYSIS

To be the procuring cause of a real estate sale, "a broker must show that he called the potential purchaser's attention to the property and that it was through his efforts that a sale . . . was consummated."[21] The broker is entitled to compensation if he brought the parties together and a sale is effectuated as a result of his efforts, even when the seller interrupts those negotiations and sells directly to the purchaser at a price lower than what the broker was authorized to offer.[22] Further, a broker does not need to be involved in continuous negotiations with the parties if he is intentionally excluded from the parties' negotiations.[23]

---

[20] Doc. Nos. 224 and 225, respectively.

[21] *B & B Supermarkets, Inc. v. Metz,* 260 So. 2d 529, 531 (Fla. 2nd DCA 1971) (citing *Nat'l Airlines, Inc. v. Oscar E. Dooly Assoc., Inc.*, 160 So.2d 53, 54-55 (Fla. 3rd DCA 1964)).

[22] *Estes v. Moylan*, 94 So.2d 362, 365 (Fla. 1957). "Recovery is allowed on the theory that the owner, by his interruption of the broker's negotiations or by acceptance of the counter offer, has deprived the broker of the opportunity to bring his customer up to the authorized price, and hence that he has waived the price requirement stipulated in his contract with the broker. *Id*. (citing *Dancy v. Baker*, 206 Ala. 236, 89 So. 590 (Ala. 1921)).

[23] *Sheldon Greene & Assocs. v. Rosinda Invs., N.V.*, 475 So.2d 925, 927 (Fla. 3rd DCA 1985). "[T]he continuous negotiation requirement is vitiated where the seller and buyer exclude the broker, and the broker need only establish that the seller and buyer dealt him out." *Id* at 928. *See Media Services Group, Inc. v. Bay Cities Commc'ns, Inc.*, 237 F.3d 1326, 1330 (11th Cir. 2001) ("[I]ntentional exclusion does not require a showing of bad faith. Rather, intentional exclusion means that the buyer has negotiated directly with the seller without the participation of the broker who first brought the parties together.")

But, Goldberg's claim does not fall within these parameters. The 2016 Contract was never closed. His efforts did not lead to the ultimate sale. Goldberg did not conduct the auction on behalf of the Trustee. The 2017 Sale was the result of a public auction, not from Goldberg's unsuccessful efforts to close the 2016 Contract.

At most, Goldberg brought the attention of J&C's principal to the property. And, he facilitated the resolution of some, but not all, of the disputed conditions precedent to closing the 2016 Contract. Goldberg states that he "performed all necessary and appropriate functions as the real estate broker to facilitate the sale of [the] property" throughout the process, including duties necessary to procure the 2016 Contract – convincing J&C's principal (Mr. Jallo) to not walk away, convincing Mr. Lowy to work with the Chapter 7 Trustee to "facilitate the process," and communicating regularly with all parties involved.[24] J&C's principal confirmed that Goldberg was instrumental to the effort to close the 2016 Contract, but gave no indication that Goldberg affected the auction process in any way.[25]

The auction was a competitive process in which some other entity could have been the buyer. Goldberg would also have no claim to the entitlement if the auction had resulted in a sale of the property to the backup buyer.

This is not a situation where the broker was excluded from ongoing negotiations or cut out of the final deal in an effort to eliminate the commission. The 2016 Contract was scheduled to close by July 26, 2016, but extended to September 29, 2016.[26] After more than nine months of

---

[24] *See* Affidavit of Bruce Goldberg, Doc. No. 247-1. The Chapter 7 Trustee disputes that there were regular communications with Goldberg.

[25] *See* Affidavit of Christopher Jallo, Doc. No. 250.

[26] The *Emergency Motion to Approve Addendum to Commercial Contract* (JFL Doc. No. 48) sought to extend the inspection period until "any Order approving the Addendum is final," and to extend the deadline for closing "until 15 day[s] after the close of the inspection period." The order approving the addendum

effort, the 2016 Contract was not closed. The Trustee received a title commitment, dated January 23, 2017, that contained thirty-eight (38) exceptions to title. The parties were unable to resolve those issues. Further, J&C's funding lapsed, and they required more time to obtain new financing to close under the contract. Faced with imminent foreclosure and recognizing that the 2016 Contract was not going to close, the Trustee cancelled the contract, returned J&C's deposit, and scheduled the auction.

Goldberg objected to the auction, but only on the ground that J&C was "ready, willing, and able to close the in question sale of said property."[27] This proved untrue, however, as J&C was not willing to go forward without resolution of the alleged problems. Goldberg did not object to Doyle's employment or the payment of a commission/buyer's premium to him from a successful auction, and did not voice any opposition to the practicality or need of the auction. Goldberg was aware that the 2016 Contract had fallen through and that his services were no longer needed.

## CONCLUSION

This Court's approval of the 2016 Contract does not entitle Goldberg to a commission. The Court order authorized, and Goldberg procured, a sale contract that was never closed. The conversion of the cases and the approval of the auction process superseded Goldberg's sale efforts.

Therefore, it is **ORDERED**:

1. That Goldberg's Motion for Administrative Claim (Doc. No. 224) is hereby DENIED.

2. That Goldberg shall have no claim in this case.

Attorney Mariaelena Gayo-Guitian is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

---

(JFL Doc. No. 63) was entered on August 22, 2016, and became final on September 5, 2016, but did not specifically state a closing date.

[27] *See* Doc. No. 205.